UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCIS M. SAVOY,

Plaintiff,

v.

THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF TRANSPORTATION, NEW YORK CITY DEPARTMENT OF PARKS & RECREATION, NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION, GOVERNORS ISLAND CORPORATION, d/b/a THE TRUST FOR GOVERNORS ISLAND, LIRO PROGRAM AND CONSTRUCTION MANAGEMENT, PE, PC, and REICON GROUP LLC,

Defendants.

24 Civ. 1978 (DEH)

**OPINION AND ORDER**

DALE E. HO, United States District Judge:

Plaintiff Francis M. Savoy worked as a commercial diver engaged in marine construction, performing work that included excavating soil, debris, and old wood piles from the water near Manhattan. On February 27, 2023, as part of a ferry slip rehabilitation construction project at the Battery Marine ferry terminal in lower Manhattan, he was injured when a wall of soil and debris collapsed while he was removing a pile from the mud, leading to the amputation of the tip of his pinky finger. Savoy brings claims against his employer, Defendant Reicon Group LLC ("Reicon"), as well as the City of New York ("NYC") and Governors Island Trust, d/b/a, The Trust for Governors Island ("GIT") (jointly referred to as "the City" or "City Defendants"), which contracted with Reicon for marine construction services.

Savoy, Reicon, and the City all move for summary judgment. As explained herein, the Court concludes the Reicon is entitled to judgment as a matter of law on all claims brought against it. The City is also entitled to partial summary judgment, as it lacked supervisory authority necessary to establish liability under Section 200 of the New York Labor Law. However, the Court concludes that there remain disputes of material fact regarding the circumstances leading to Savoy's injury that preclude judgment for either side on Savoy's other claims under the New York Labor Law. Accordingly, Reicon's Motion for Summary Judgement is **GRANTED IN FULL**, the City's Motion is **GRANTED IN PART AND DENIED IN PART**, and Savoy's Motion is **DENIED**.

## BACKGROUND[1]

Plaintiff Francis M. Savoy is a citizen and resident of New Jersey. Reicon Statement of Material Facts ("Reicon 56.1 Stmnt.") ¶ 1, ECF No. 103. Savoy is a commercial diver and commercial dive supervisor. *Id.* ¶ 2. He is a member of the marine divers section or division of the District Council of Carpenters for New York City and Vicinity for Dockbuilders, Local Union No. 1556. *Id.*; Savoy Resp. to Reicon Statement of Material Facts ("Savoy 56.1 Resp.") ¶ 2, ECF No. 111.

Savoy alleges that, on February 27, 2023, while employed by Reicon, he sustained injuries at a maritime construction site located adjacent to the Battery Maritime Building Slip 5/6 in lower Manhattan ("the Construction Site"). Reicon 56.1 Stmnt. ¶ 6. Reicon's work involved the rehabilitation of Slips 5 and 6 at the Construction Site, located adjacent to the Staten Island Ferry terminal in Manhattan. *Id.* ¶ 8. Reicon performed its work on the Construction Site pursuant to a

---

[1] The facts herein are taken directly from the Parties' Rule 56.1 statements and are undisputed unless stated otherwise.

contract with the Governor's Island Corporation, doing business as "The Trust for Governors Island," for the rehabilitation of the ferry slips and related infrastructure. *Id.* ¶ 9.

The Contract further required Reicon to provide, erect, furnish, maintain, and promptly and properly replace, as necessary, all reasonable, necessary or required safety devices for its employees and flagmen. City Defendants' Statement of Material Facts ("City 56.1 Stmnt.") ¶ 2, ECF No. 106. Under the Contract, Reicon assumed responsibility to "initiate, maintain and supervise safety precautions and programs to prevent damage, injury or loss to all Reicon employees . . . and to designate a responsible, experienced Project Safety Representative at the Project jobsite." *Id.* ¶ 3. Although the City of New York was the owner of the property upon which the Project was located, no employees from the City of New York were present at the jobsite on a regular basis or at the time of the accident, nor did they provide Savoy or any other jobsite employee with any safety equipment or gear. *See* Stipulated Facts ¶¶ 2-5, ECF No. 96-5. Savoy testified that he never personally met with nor received work direction/instructions from any employee or representative of the City of New York. City 56.1 Stmnt. ¶ 9.

Reicon utilized a "spud barge" at the construction site as a stationary work platform to support dive and dock building operations. Reicon 56.1 Stmnt. ¶ 19. A spud barge could be "spudded" in place—i.e. positioned with its spuds in place in the seabed—but, with the spuds removed, could be repositioned by a tugboat as needed. Reicon 56.1 Stmnt. ¶ 22. A crane was also situated aboard the barge, as were compressors and other equipment required by the dock builders. *Id.* ¶ 19. The barge was used to support the construction and related commercial dive operations. *Id.*

While for the most part stationary at the job site, Savoy testified that the barge was also moved a long distance to the jobsite initially and moved around the job site throughout the project. Savoy 56.1 Resp. ¶ 19. As Savoy explained at his deposition, the Reicon barge at the Construction

Site was "spudded in" and immobile at the site "[f]or the most part…," which kept the barge "in position." Reicon 56.1 Stmnt. ¶ 23. As further testified to by Savoy: "That was the only reason why it was really moved, was to load materials on, to unload and load materials on" "[o]nce every few weeks, once every month," which would consist of moving "100, 200 feet to get supplies," after which the barge would be moved back into position. *Id.* ¶¶ 28-30. The Project was located immediately adjacent to shore. *Id.* ¶ 38. Savoy testified that the furthest he was offshore while diving was approximately 200 to 250 feet from the land, and that this distance corresponded to the outer edge of the spud barge. *Id.* Savoy and Reicon's other marine construction workers at the Construction Site accessed the barge each day by walking directly from land over a gangway without the use of any vessel or transportation. *Id.* ¶ 39.

Savoy did not have any special certifications qualifying him as a seaman. He held no licenses from the Coast Guard nor any rating in the merchant marine, such as "Ordinary Seaman" or "Abled Body Seaman." *Id.* ¶ 47-49. He also never held a Mate's or Captain's license issued by the Coast Guard. *Id.* ¶ 49. He never held any marine titles such as "deckhand," "mate" or "captain" on the barge. *Id.* ¶ 51. He never slept aboard the barge. *Id.* ¶ 53. He also was not a member of any seaman's union, nor did he attend any seaman's schools. *Id.* ¶¶ 55-56. When not diving, Savoy performed the duties of a dockbuilder and was paid pursuant to his union's rate for a dockbuilder for that work. ¶ 57. He has never worked in vessel navigation or as a vessel crew member. *Id.* ¶ 60.

On February 27, 2023, Savoy was performing underwater work as part of Reicon's marine construction operations at the Battery Maritime Building Slip 5/6 project. *Id.* ¶ 69. He was responsible for removing underwater wood piles (similar in size to telephone poles). *Id.* ¶ 71. In the six weeks prior to the alleged accident, Reicon was using a clam shell bucket to dig mud, debris, and pile remnants from the river floor to make room for the installation of a cofferdam—a

reinforced, watertight enclosure down to the river floor from which water is removed by high-pressure pumps, allowing construction work on the dry floor below. City 56.1 Stmnt. ¶ 25. In doing so, Reicon created a 15-20-foot underwater wall of mud. *Id.* ¶ 26. That morning, Savoy identified and removed one old pile from the mud wall without issue. *Id.* ¶ 28. That afternoon, he identified a second pile but was injured while trying to remove it. *Id.* ¶¶ 29, 31.

The Parties dispute the exact circumstances of Savoy's injury. Savoy testified that the accident occurred after he placed a chain around a pile for removal by crane. Reicon 56.1 Stmnt. ¶ 72. Immediately after tension was applied to the chain, Savoy claims that mud and other debris from the mud wall collapsed onto his back, pinning him against the pile and causing injury to his hand. City 56.1 Stmnt. ¶ 31. In contrast, the Diving Superintendent on the project, John O'Neill, testified that Savoy told him that he used a pile chain to lift a stone rather than a pile at the time of the accident. *Id.* ¶¶ 38-40; Reicon 56.1 Stmnt. ¶ 74. O'Neill also testified that a pile chain is an improper tool to use for lifting objects other than piles because a chain can cause the rock to slip or shift, and that a nylon strap would have been more appropriate. City 56.1 Stmnt. ¶ 40; Reicon 56.1 Stmnt. ¶ 75. He further testified that it was his view that Savoy was too close in proximity to the pile when he gave the go ahead to the crane to begin lifting and that Savoy should have backed away before doing so. City 56.1 Stmnt. ¶ 37. Witnesses in this case also cannot agree on exactly what happened after the wall collapse, some testifying that Savoy immediately returned to the surface injured, another stating he remained underwater for 40 additional minutes. City 56.1 Stmnt. ¶¶ 32-34.

Setting aside how the collapse occurred, Savoy stated that there was "obviously nothing that was in place to prevent that wall of materials from falling in on me, to protect me," indicating that the collapse resulted from conditions at the construction site rather than from any issue with the barge as a vessel. Reicon 56.1 Stmnt. ¶ 73. Savoy also testified that there was nothing wrong

with the Reicon barge that was at the Construction Site. *Id.* ¶ 76 ("Q: While you were working on the project, including at the time you were injured, was there anything wrong with the barge, any issues with the barge? A. No. Q. Anything wrong with any of the equipment on the barge that you're aware of? A. No.").

Following the accident of February 27, 2023, Savoy received worker's compensation benefits from Reicon pursuant to the Longshore & Harbor Worker's Compensation Act. Reicon 56.1 Stmnt. ¶ 80. He then filed this case on March 15, 2024. *See* Compl., ECF No. 5.

**LEGAL STANDARD**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).[2] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual

[2] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236. But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)). The Court cannot rely on inadmissible hearsay in finding a dispute of fact. *See Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 409 (S.D.N.Y. 2015), *aff'd sub nom.*, *Abdel-Karim v. Egyptair Holding Co.,* 649 F. App'x 5 (2d Cir. 2016).

## DISCUSSION

Savoy brings a total of eight claims, some against Reicon as his direct employer, and others against the City under the New York Labor Law. For the reasons stated herein, the Court concludes that Reicon is entitled to judgment on Savoy's claims against it. The Court further concludes that the City is entitled to judgment on Count III as abandoned, while there remains a dispute of fact precluding summary judgment on Counts IV and V. Accordingly, Reicon's Motion for Summary Judgement is **GRANTED IN FULL,** the City's Motion is **GRANTED IN PART AND DENIED IN PART**, and Savoy's Motion is **DENIED**.

### I. Claims Against Reicon

Savoy brings several claims against Reicon, alleging violations of state and federal negligence law (Counts I and II), the Jones Act (Count VI), the general doctrine of unseaworthiness

(Count VII), and Section 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA") (Count VIII). On the undisputed record before the Court, each of these claims fails as a matter of law.

**A. Jones Act Seaman**

As an initial matter, many of Savoy's claims turn on whether he was a "seaman" within the meaning of the Jones Act. "To prove seaman status, an employee must establish his or her (1) employment-related connection, (2) to a vessel in navigation." *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 63 (2d. Cir. 2002). "The worker's duties must contribute to the function of the vessel or to the accomplishment of its mission, and the worker must have a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in terms of both its duration and its nature." *In re Verplanck Fire Dist.*, 175 F.4th 144, 154 n.7 (2d Cir. 2026); *see also Black's Law Dictionary* 1349 (6th ed. 1990) (defining seamen as workers "assigned permanently to a vessel in navigation" or those who "performs substantial work on vessel, contributing to function of vessel or to accomplishment of its mission"). "Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 361 (1995). "The key is whether the individual had a sufficient relation to the navigation of vessels and the perils attendant thereon." *In re Buchanan Marine, L.P.*, 874 F.3d 356, 366 (2d Cir. 2017).

Whether an employee qualifies as a seaman "is a mixed question of law and fact." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997). Summary judgment is appropriate "where the facts and the law will reasonably support only one conclusion." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991); *see also Chandris*, 515 U.S. at 371 (noting that summary

judgment should be granted "where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation").

The Second Circuit directly confronted the bounds of seaman status in the seminal case on the issue, *O'Hara*, 294 F.3d at 64. There, the Court determined that a Plaintiff's "connection to the vessel qua vessel was insufficiently substantial in terms of both its duration and its nature to support the conclusion that he qualifies as a seaman." *Id.* The Court relied on evidence quite similar to that presented here:

> "O'Hara spent more than half his working hours during a five-month period aboard the barges, [] he spent all of that time performing tasks related to repair of the Staten Island pier, while the barges were secured to the pier. O'Hara belonged to the dockbuilders union. He held no Coast Guard license or other "seaman's papers." He never spent the night aboard a barge. Neither did he ever operate a barge or otherwise assist in its navigation. *See Papai*, 520 U.S. at 555, 117 S.Ct. 1535 ("[T]he inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea."); *Chandris*, 515 U.S. at 359–60, 115 S.Ct. 2172 (clarifying that seaman status is a function of the worker's "relationship as such to the vessel and its operation in navigable waters") (internal quotation marks and citation omitted). Finally, no evidence suggests that O'Hara had an employment-related connection to another vessel. Even assuming the barges were "vessels in navigation," O'Hara thus produced no evidence from which a reasonable jury could conclude that he "derives his livelihood from sea-based activities." *Fisher*, 81 F.3d at 322. At most, the evidence establishes that O'Hara had a "transitory or sporadic" connection to the Weeks barges, the relevant "vessels in navigation," in their capacity as vessels in navigation. Such a minimal connection does not suffice to confer seaman status on him. *Chandris*, 515 U.S. at 368, 115 S.Ct. 2172. Because O'Hara does not qualify as a "seaman" within the meaning of the Jones Act, we affirm the dismissal of his Jones Act claims.

*Id.*

Based on the Second Circuit's decision in *O'Hara* and its progeny, the Court finds it clear that Savoy does not qualify as a seaman. All of his tasks were related to construction at the Battery site, not any seagoing or navigational activity. Reicon 56.1 Stmnt. ¶ 8. His work occurred while the barge was secured in place just offshore, and he never travelled aboard the barge from one location to another. *Id.* ¶ 23. He held no licenses or "seaman's papers." *Id.* ¶ 47-49. He never

slept on the barge. *Id.* ¶ 53. He never assisted in navigating the barge. *Id.* ¶ 60. And even if the barge was a vessel in navigation, Savoy's duties were irrelevant to that navigation or the vessel's seafaring purpose. *Id.* ¶ 57.

Savoy does cite one case from the Fifth Circuit which concluded that a commercial diver was a seaman within the meaning of the Jones Act, *Wallace v. Oceaneering Int'l*, 727 F.2d 427 (5th Cir. 1984). However, "[i]n *Wallace*, the plaintiff diver spent as much as a month at a time on vessels. He ate, slept, and performed other chores on vessels. He performed over ninety-five percent (95%) of his work aboard offshore vessels." *Landry v. Specialty Diving of La., Inc.*, 299 F. Supp. 2d 629, 635 (E.D. La. 2003), *aff'd*, 110 F. App'x 386 (5th Cir. 2004); *see also Clark v. Am. Marine & Salvage, LLC*, 494 F. App'x 32, 35 (11th Cir. 2012) (distinguishing *Wallace* on the basis of its finding that the plaintiff lived on the vessel). Thus, even if *Wallace* were binding on this Court, the Court concludes that the undisputed facts present here distinguish this case from *Wallace*, and compel the conclusion that Savoy was not a seaman.

In sum, Savoy "did not go to sea and he was not exposed to the perils of the sea in the manner associated with seaman status." *In re Buchanan Marine, L.P.*, 874 F.3d at 368; *see also Daza v. Pile Found. Const. Co.*, 983 F. Supp. 2d 399, 410 (S.D.N.Y. 2013) (finding that an employee on a barge that moved at least once per week and who assisted with barge movements did not qualify as a seaman). Thus, the Court concludes as a matter of law that Savoy was not a seaman within the meaning of the Jones Act.

### B. Negligence

Savoy first brings two claims against Reicon for general negligence. However, each of these claims is precluded by law. The LHWCA provides in pertinent part: "[t]he liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability

of such employer to the employee." 33 U.S.C. § 905(a). As the Second Circuit explained in *O'Hara*:

> The LHWCA "establishes a comprehensive federal workers' compensation program that provides longshoremen and their families with medical, disability, and survivor benefits for work-related injuries and death." *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 96 (1994) . . . . Employees eligible for LHWCA benefits include "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker . . . ." 33 U.S.C. §902(3). But **the LHWCA expressly excludes, inter alia, "a master or member of a crew of any vessel."** *Id.* … Under the LHWCA, an "employer" is one "whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States." *Id.* § 902(4). The LHWCA entitles employees to no-fault compensation payments for workrelated injuries. As with most other workers' compensation schemes, **this entitlement displaces the employee's common-law right to bring an action in tort against his or her employer**. The LHWCA limits employer liability to the provision of scheduled no-fault compensation payments. *Id.* §§ 904, 905(a). An injured LHWCA employee may, however, sue a third party—typically the owner or charterer of the vessel on which he or she sustained the injury—for negligence. *Id.* § 933(a).

294 F.3d at 62 (emphases added). Reicon argues, and Savoy does not appear to contest, that Savoy's receipt of benefits under the LHWCA precludes his state law claims. Savoy's sole opposition to the preclusion of his negligence claims is an argument that he qualifies as a Jones Act seaman, in which case the LHWCA would not apply. But as the Court explained above, Savoy is not a seaman. Therefore, his claims are precluded by the LHWCA. *In re Buchanan Marine, L.P.*, 874 F.3d at 368. Summary judgment is therefore appropriate on Counts I and II.

### C. LHWCA Section 905(b)

Reicon also moves for summary judgment on Savoy's claim under Section 905(b) of the LHWCA, which provides:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party . . . If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel.

33 U.S.C. § 905(b).

As explained above, the LHWCA precludes claims for negligence of an employer while allowing negligence claims against owners or charterers of vessels. Employers sued under Section 905 may only be liable under § 905(b) for the negligence of a vessel and not for acts or omissions occurring in their capacity as employer. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 531 n.6 (1983); *Gravatt v. City of New York*, 226 F.3d 108, 124-125 (2d Cir. 2000). This vessel-related duty is limited to a duty to exercise ordinary care in maintaining the vessel such that an experienced dock construction worker would be able through the exercise of reasonable care, to perform his work with reasonable safety. *Scindia Steam Nav. Co. v De Los Santos*, 451 U.S. 156, 166-167 (1981) (explaining the federal common law duties of vessel owners).

> [W]hen the employer of an injured harbor worker is also the owner of the vessel and is sued by the harbor worker for negligence under section 905(b) for vessel negligence, the court's task is to analyze the allegedly negligent conduct to determine whether that conduct was performed in the course of the operation of the owner's vessel as a vessel or whether the conduct was performed in furtherance of the employer's harbor-working operations.

*Gravatt*, 226 F.3d at 125 (explaining that an unsafe debris pile on vessel created by employees fell within scope as employer, not vessel owner); *see also, e.g.*, *Morehead v. Atkinson-Kiewit, J/V*, 97 F.3d 603, 616 (1st Cir. 1996) (explaining that falling through a hatch on boat negligently left open is not a vessel-related accident).

Based on the undisputed facts in this case, the Court concludes that there is no reasonable dispute that any alleged negligence in this case is not vessel-related within the meaning of the LHWCA. Savoy's injuries were suffered while performing harbor construction work only loosely connected to the barge. *See* Reicon 56.1 Stmnt. ¶¶ 73, 76; *cf. In re Buchanan Marine, L.P.*, 874 F.3d at 369 (reversing dismissal of 905(b) claim where possible that vessel-related negligence led to Plaintiff's injuries). On the undisputed record, any alleged negligence stems from the alleged failure to use safety precautions for the mud wall, not anything relating to the operation of the

vessel as a vessel, or a malfunction associated with the barge. Accordingly, Reicon is entitled to summary judgment on this claim.

## II. Claims Against the City

Savoy also brings several claims against the City, alleging violations of New York Labor Law Sections 200, 240(1), and 241(6). After discovery, Savoy withdrew his claim under Section 200, as he acknowledged that the City did not supervise the worksite as required by law. Savoy Resp. in Opp. to Mot. for Summ. J. of City Defendants ("Savoy MOL Opp.") at 8, ECF No. 109. The Court also concludes that there remains a dispute of fact that precludes summary judgment for any party on the remaining claims under Sections 241(6) and 240(1).

### A. Section 241(6)

"Labor Law § 241(6) holds an owner of the premises vicariously liable for all injuries to construction workers where the general contractor or subcontractor fails to comply with workplace safety regulations promulgated by the Commissioner of the Department of Labor in New York's Industrial Code." *Davis v. Cumberland Farms, Inc.*, No. 10 Civ. 480, 2013 WL 375477, at *6 (N.D.N.Y. Jan. 29, 2013). "However, this vicarious liability is limited: only provisions of the Industrial Code mandating compliance with concrete specifications give rise to a nondelegable duty [and vicarious liability] under Labor Law § 241(6)." *Mann v. Mezuyon, LLC*, No. 39, 2026 WL 1462931, at *2 (N.Y. May 26, 2026). Upon pleading a sufficiently specific provision of the industrial code, a plaintiff must then show that this specific violation is both applicable to the facts and circumstances and proximately caused the plaintiff's injuries. *Zaino v. Rogers*, 153 A.D.3d 763, 764 (N.Y. App. Div. 2017); *see also Alexandre v. City of New York*, 750 N.Y.S.2d 651, 652-653 (N.Y. App. Div. 2002) (explaining that to prevail on §241(6) claim, plaintiff must also prove defendant's violation of the Industrial Code was a proximate cause of his injuries). Merely citing to an entire subpart that contains many provisions, some setting forth general safety stands and

others containing concrete specifications, is insufficient to defeat a defendant's motion for summary judgment. *Rought v. Price Chopper Operating Co., Inc.*, 73 A.D.3d 1414, 1415 n.* (N.Y. App. Div. 2010) (citing *Narrow v. Crane-Hogan Structural Sys.*, 202 A.D.2d 841, 842 (N.Y. App. Div. 1994)). A provision is sufficiently specific where it identifies a "specific safety concern and command[s] a specific action required to address that concern." *Mann*, 2026 WL 1462931, at *3.

Savoy relies primarily on N.Y. Comp. Codes R. & Regs. tit. 12, §§ 23-4.2 and 23-4.4, which set various safety standards for excavations. Section 23-4.2 sets maximum slope angles for excavations of various depths and materials, while Section 23-4.4 governs the sheeting or bracing required for excavations. Each of these provisions contains requirements that appear to be sufficiently specific to sustain a claim under Section 241(6), as both provisions identify the risks of trench collapse and provide specific steps for preventing such collapse. *Veloso v. City of New York*, 248 A.D.3d 491, 493 (N.Y. App. Div. 2026) (finding §§ 23-4.2(a) and 4.4(a) to be sufficiently specific but declining to find a violation); *cf. Vanderwall v. 1255 Portland Ave. LLC*, 128 A.D.3d 1446, 1447 (N.Y. App. Div. 2015) (finding that N.Y. Comp. Codes R. & Regs. tit. 12, §§ 23-4.2 (k) is insufficiently specific). To the extent that Savoy bases his claim on these specific, enforceable requirements within the Industrial Code, the claim can proceed.

Nonetheless, while both Savoy and the City move for summary judgment on this claim, the Court concludes that disputes of material fact preclude judgment as a matter of law for either party, particularly as to causation. There remain factual disputes regarding where Savoy was standing at the time of the accident, what caused the collapse, and whether his negligence was responsible for the collapse of the trench or his injuries. There is also no evidence in the record, expert or otherwise, that would establish how specific code violations, if corrected, would or would

not have prevented the accident. Accordingly, both motions are DENIED with respect to Count V.

**B. Section 240(1)**

Savoy also moves for partial summary judgment as to liability on his claim under Section 240(1). New York Labor Law § 240(1) provides:

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

"The statute was designed to provide 'exceptional protection' for workers against the 'special hazards' which stem from a work site that is either elevated or positioned below the level where materials are hoisted or secured." *Rivas-Pichado v. 292 Fifth Ave. Holdings, LLC*, 198 A.D.3d 826, 828 (N.Y. App. Div. 2021). "Liability under the statute is *absolute* where the failure to provide proper protection is a proximate cause of a worker's injury." *Id.* (emphasis added).

The Parties note a split across the appellate departments regarding whether Section 240(1) applies to a soil collapse. *Compare Rivas v. Seward Park Hous. Corp.*, 219 A.D.3d 59, 61 (N.Y. App. Div. 2023) (finding that soil collapse falls within the risk of gravity related harms contemplated by Section 240(1)) *with Ferriera v. Village of Kings Point*, 68 A.D.3d 1048, 1050-1051 (N.Y. App. Div. 2009) (holding that soil collapse does not fall within the Section). Nonetheless, the Court concludes that, even assuming Section 240(1) applies to soil collapse, Savoy is not entitled to judgment. While "the collapse or cave-in of the side of a trench may evince a failure to provide adequate protection against the risk arising from the physically significant elevation differential," *Veloso*, 248 A.D.3d at 492, liability does not lie under Section 240(1) where

an injury "came from the particular wall of the trench that was actively being excavated." *Id.* As appears undisputed, "securing the [] wall of the trench in the very direction that work was progressing would have been contrary to the objectives of the work plan." *Id.* (citing *Salazar v. Novalex Contracting Corp.*, 960 N.E.2d 393, 395 (N.Y. 2011)). While true that Savoy has established the absence of safety devices provided by the City based on the stipulations, Stipulated Facts ¶¶ 3-5, the Court concludes that the lack of these safety devices does not establish a strict liability claim under Section 240(1). *Cf. O'Brien v. Port Auth. of N.Y. & N.J.*, 74 N.E.3d 307, 310-11 (2017) (explaining that liability is only automatic in "cases involving ladders or scaffolds that collapse or malfunction for no apparent reason where [New York courts have] applied a presumption that the ladder or scaffolding device was not good enough to afford proper protection" and that, outside of that specific context, "questions of fact" remain "as to whether the [safety measures] provided adequate protection."). A jury could reasonably conclude that safety devices would have rendered Savoy's task impossible, precluding judgment as a matter of law. *Veloso*, 248 A.D.3d at 492.

Accordingly, Savoy's motion is DENIED on Count IV.

## CONCLUSION

For the reasons discussed herein, Reicon's Motion for Summary Judgement is **GRANTED IN FULL**. The City's Motion is **GRANTED IN PART AND DENIED IN PART**. Savoy's Motion is **DENIED**.

Within 14 days of this Order, the parties are directed to file a joint letter indicating whether the parties would like to be referred to the District's mediation program or to the assigned magistrate judge for a settlement conference. The Parties should also state the estimated length and their availability for trial in October, November, and December of this year.

The Clerk of Court is respectfully directed to terminate ECF Nos. 94, 100, 104, and 120.[3]

SO ORDERED.

Dated: July 16, 2026
New York, New York

DALE E. HO
United States District Judge

[3] Savoy's motion for leave to file excess pages is **DENIED AS MOOT**.